UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN CARY,                              Case No.: 17-13217

      Plaintiff,                        Mark A. Goldsmith
v.                                       United States District Judge

HEIDI WASHINGTON, *et al.*,              Stephanie Dawkins Davis
                                         United States Magistrate Judge

      Defendants.
_____/

## REPORT AND RECOMMENDATION
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 28),
## PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF (Dkts. 3, 23), AND
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 41)

## I.     PROCEDURAL HISTORY

Plaintiff brought this action *pro se* under 42 U.S.C. § 1983 against six

named defendants and "Dental Staff." (Dkt. 1). District Judge Mark A. Goldsmith

referred this case to the undersigned for all pretrial purposes on November 9, 2017.

(Dkt. 15). The named defendants, MDOC Director Washington, Deputy Director

McKee, Grievance Manager Russell, Warden Stewart, Deputy Warden Lindsey,

and Grievance Coordinator McCumber-Hemry filed a joint motion for summary

judgment on March 22, 2018. (Dkt. 28). Plaintiff responded (Dkt. 32) and

defendants replied (Dkt. 34). Plaintiff filed a sur-reply, without seeking leave of

Court to do so (Dkt. 37). It has been stricken as a result in a Text-Only Order

dated July 30, 2018. Plaintiff also filed two motions for temporary restraining

order and preliminary injunction.  (Dkts. 3, 23).  Defendants responded (Dkt. 35) and plaintiff replied (Dkt. 38).  On May 25, 2018, plaintiff filed his motion for summary judgment (Dkt. 41), defendants responded (Dkt. 43), and plaintiff replied (Dkt. 44).

## II.     FACTUAL BACKGROUND AND PARTIES' ARGUMENTS

### A.     Plaintiff's Complaint

Plaintiff was at all times relevant to this case, an inmate at the Cotton Correctional Facility (JCF) in Jackson, Michigan.  He is now incarcerated at Gus Harrison Correctional Facility (ARF).  Plaintiff alleges that he suffers from "TMJ," a jaw joint disorder which causes him to bite down hard and grind his teeth when he sleeps, causing pain in his mouth and jaw joints.  (Dkt. 1, Complaint, Pg ID 1). On June 27, 2017, plaintiff went to the prison's medical department for treatment, and was referred to dental.  When he explained his pain to the dental staff, they informed him that they could not provide treatment and showed him policy directive 04.06.150 "Dental Services."  (*Id.* at Pg ID 3).  The policy states that dental services are not to be provided for Temporomandibular Joint Dysfunction ("TMJ" or "TMD"), among other conditions.  (*Id.*).  However, paragraph K of the policy states that urgent emergency dental services will be available in the prison; and the policy describes "urgent" as a condition determined by a dentist to be medically necessary, including those involving significant pain or discomfort.

(*Id.*).  The dental staff told plaintiff to talk to the "RUM," which plaintiff did, but the RUM replied "I don't have anything to do with you being able to get treatment."  (*Id.* at Pg ID 1).  Plaintiff then filed a grievance, but it was rejected "with a malicious response," indicating that a grievant may not grieve the content of a policy except as it was specifically applied to him.  Plaintiff asserts that he clearly grieved the dental staff for refusing treatment and described how the policy was specifically applied to him.  Plaintiff claims that defendants are enforcing a policy—which defendants Washington and McKee wrote and enforced—that allows them to inflict cruel and unusual punishment on him.  (*Id.* at Pg ID 2).

  B.  <u>Defendants' Motion for Summary Judgment and Parties' Arguments</u>

    Defendants construe plaintiff's complaint as alleging that policy directive 04.06.150, which governs dental services in MDOC facilities, prevents plaintiff from obtaining a free mouth guard[1] for his TMD in contravention of his Eighth Amendment rights.  (Dkt. 28, at p. 3).  Defendants explain that the Dental Advisory Board ("DAB") is responsible for determining what services will be provided by MDOC, subject to the approval of the Bureau of Health Care Services ("BHCS").  (*Id.* at p. 4; Exhibit B – Policy Directive 04.03.0130).  Pursuant to

---

  [1] Defendants' construction of plaintiff's mouth guard request apparently derives from plaintiff's grievance, in which he specifically states that he was attempting to get a bite guard for his TMJ.  (Dkt. 28-5, Ex. D – plaintiff's grievance).  However, in his complaint, plaintiff writes of wanting treatment in general and does not reference a mouth guard or bite guard.  (Dkt. 1).

policy directive 04.06.150, the DAB is comprised of the BHCS Dental Director and other staff designated by the BHCS.  In October 2015, the DAB requested one of its members to update the body on the utility and appropriateness of prescribing and using mouth guards or bite splints as a treatment for TMD.  (*Id.*).  The assigned DAB member reported to the DAB that current dental and medical research does not find treatment of TMD with mouth guards/bite splints to be effective.  The member also reported that current research has found that defects in the jaw joint are best addressed by specialists, rather than general practice dentists. (*Id.* at p. 4-5).  As a result, the DAB concluded that it was "no longer appropriate" for MDOC clinics to provide services for TMD.  (*Id.* at p. 5; Exhibit C, DAB meeting minutes, at p. 2).

Defendants first argue that plaintiff's Eighth Amendment claims should be dismissed because plaintiff failed to properly exhaust his administrative remedies in that he did not identify any of the named defendants in his grievance or grievance appeals.  (*Id.* at p. 8).  Second, defendants argue that they did not have the requisite personal involvement in the alleged unconstitutional conduct to be liable under 42 U.S.C. § 1983.  (*Id.* at p. 14).  Specifically, defendants Lindsey, McCumber-Hemry, Stewart and Russell merely reviewed plaintiff's grievances; defendants Stewart and Lindsey were not employed at the facility at the time of the alleged Eighth Amendment violation; and defendants Washington and McKee had

no direct personal involvement with plaintiff's health care or dental care.  (*Id.* at pp. 12-14).

In response, plaintiff points out that defendants' rejection of his grievance was purportedly because his grievance attempted to grieve the content of policy which, according to the grievance responses cannot be grieved.  Thus, plaintiff argues that, because the content of policy cannot be grieved, there was no available administrative remedy to pursue.  (Dkt. 32, at p. 1).  And, because there was no available remedy to pursue, defendants cannot now argue failure to exhaust.  (*Id.*). However, plaintiff also asserts – presumably in the alternative – that because he still attempted to grieve the issue through all three steps, he did properly exhaust administrative remedies.  (*Id.* at p. 2).  With respect to defendants' argument that he failed to name individual defendants, plaintiff contends that he was not able to provide names of the dental staff in his grievance because the dental staff would not give him names.  (*Id.* at p. 4).  Citing *Reed-Bay v. Pramstaller,* 603 F.3d 322, 324 (6th Cir. 2010), he asserts that even absent the names, he referenced dental staff and sufficiently set forth the actions complained of, such that the defendants had fair notice of the issue and the opportunity to resolve it.  (*Id.* at p. 3).  Plaintiff does not deny defendants' assertion that he did not name Washington in his grievance.

As to the defendants' personal involvement argument, plaintiff asserts that he made it clear that dental staff were refusing to provide treatment for his condition. (*Id.* at p. 6). Notwithstanding, plaintiff agrees to dismiss defendants Lindsey, McKee, Hemry,[2] Russell, and Stewart for lack of personal involvement. (Dkt. 32, Pg ID 173). Thus, the only portions of defendants' motion which remain unresolved are plaintiff's claims against Washington.

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

---

[2] The undersigned assumes plaintiff is referring to defendant McCumber-Hemry, as there is no other "Hemry" on the docket.

prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986)).  Furthermore, the evidence and all reasonable inferences must be

construed in the light most favorable to the non-moving party.  *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the non-moving

party to come forward with "specific facts showing that there is a genuine issue for

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party

opposing a motion for summary judgment must make an affirmative showing with

proper evidence and must "designate specific facts in affidavits, depositions, or

other factual material showing 'evidence on which the jury could reasonably find

for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the

minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S.

at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not

satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving

party.  *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id*. at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

B.    <u>Analysis</u>

As an initial matter, in light of plaintiff's agreement to voluntarily dismiss defendants Lindsey, McCumber-Hemry, McKee, Russell, and Stewart, (Dkt. 32,

Pg ID 173), the undersigned **RECOMMENDS DISMISSING** these defendants from the case. Thus, the undersigned will address the motion for summary judgment as to Washington, the sole remaining named defendant.

      1.    Exhaustion

Washington argues that she is entitled to summary judgment because plaintiff did not properly exhaust administrative remedies for his claim against her; specifically, plaintiff did not name Washington in the grievance.[3] Though failing to name a defendant in a grievance is not always fatal to a plaintiff's claim against that defendant, as discussed more fully herein, plaintiff both failed to name Washington in the grievance and failed to give fair notice of his claim against her. Therefore, the undersigned concludes that the grievance does not exhaust plaintiff's claims against Washington in relation to grievance JCF201707156627B. However, plaintiff has also stated a facial challenge to the dental policy, which does not require exhaustion, as discussed more fully herein.

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s

---

[3] Plaintiff does not contest the fact that Grievance JCF201707156627B is the only grievance applicable to this case.

"exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520, (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that failure to exhaust is an affirmative defense under the PLRA, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "Congress has provided in §1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). While the naming of individuals in a grievance who are later named in a civil lawsuit is not required by the PLRA, compliance with the prison's grievance policy – which may require individuals to be identified, is necessary. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 84. Nevertheless, even where the grievance policy requires naming those involved, a grievance that sufficiently provides notice of the issue(s) and gives the prison administration a fair opportunity to address the problem will suffice. *See e.g.,*

10

*Johnson v. Johnson* 385 F.3d 503 (5th Cir. 2004); *Johannes v. Washington*, 2016 WL 1253266 (E.D. Mich. Mar. 31, 2016) (excusing prisoner's failure to name Washington in grievance where substance of grievance gave the administration fair notice and an opportunity to correct the issue); *Ketzner v. Douglas*, 2009 WL 1655004, at *2,11 (E.D. Mich. June 11. 2009) (rejecting prison's argument that its rejection of plaintiff's grievance as untimely resulted in failure to exhaust where plaintiff filed suit after issuance of the Step III grievance response and the grievance showed that the prison had fair notice and an opportunity to correct the issue prior to the lawsuit ).

The undersigned will first address the issue of whether plaintiff was required to exhaust administrative remedies on his claim.  Under MDOC policy directive 03.02.130(F),[4] the content of a prison policy is not subject to the grievance process.  Thus, the question requires the Court to consider whether plaintiff grieved only the content of policy generally, or grieved the policy as applied to him.

The parties do not offer much clarity on the question.  MDOC administrators have taken inconsistent stands on this issue.  At the administrative level, officials

---

[4] "Grievances that raise the following non-grievable issues also shall be rejected: 1. A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant.  If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in P 04.01.150 'Prisoner Housing Unit Representative/Warden's Forum.'"  Policy Directive 03.02.130 (F) (emphasis in original).

told plaintiff that the subject of his grievance was non-grievable, and rejected it as a result.  The response to plaintiff's July 2017 Step I grievance stated, "A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant."  (Dkt. 28-5, Exhibit D - Plaintiff's grievance forms for grievance JCF201707156627B, Pg ID 123).  The rejection was upheld at Steps II and III over plaintiff's objection that he was not grieving the content of policy, but was, in fact, grieving the policy as specifically applied to him.  (*Id.* at Pg ID 124).  Yet, in these proceedings, defendants posit the seemingly irreconcilable proposition that plaintiff was required to name Washington in his grievance.  And, because he did not name her in the grievance, he failed to exhaust his administrative remedies.  (Dkt. 28, at pp. 8-10).

In response, plaintiff states that defendants made it clear that he could not grieve a policy challenge, and thus argues that he did not need to exhaust administrative remedies.  (Dkt. 32, Pg ID 168).  However, in order to support this argument, plaintiff is required to reverse the position that he took at the administrative level – i.e., that he was attempting to grieve the policy as applied to him – and argue that he was, in fact, grieving the content of the policy.  Taking the latter position he contends that he did not need to go through the grievance process under policy directive 03.02.130(F)(1).

If the grievance was *properly* rejected on the ground that plaintiff was grieving the content of policy not as specifically applied to him, then it was unnecessary for plaintiff to grieve the issue through the three step process explained above.[5]  If plaintiff did not need to grieve the issue, then there can be no argument that he failed to exhaust his administrative remedies, regardless of whether he named anyone in the grievance.

Notwithstanding the reverse positioning that the parties have undertaken to arrive at their respective arguments, in the view of the undersigned, plaintiff was, in fact, required to grieve the issue he raised.  Plaintiff's Step I grievance reveals, just as he argued in his Step II grievance appeal, he was not grieving the content of policy generally.  The Step I grievance reads as follows:

> I grind my teeth very (illegible) when I sleep.  Bad enough to where I've broke (sic) teeth.  My 2 front top ones (illegible) it causes very bad TMJ problems.  I've had this problem my whole life.  I had a bite guard but it was lost when my property came up missing on a transfer I was told I had to go through my RUM to try to get a new bite guard.  He's (illegible) responding to my kite.  My TMJ caused pain on 6-18-17.  Since then it's gotten worse.  I can't chew on my left side and when I chew it hurts I kited medical and was seen and told it was a dental issue that dental would be contacted.  Dental called me out and told me they couldn't provide any

---

[5] *See Murphy v. Martin*, 343 F. Supp. 2d 603, 608 (E.D. Mich. 2004) ("Insofar as it is the content of the policy that Plaintiff challenges, it is eminently clear from the plain reading of MDOC Policy Directive 03.02.130 that Plaintiff is precluded from grieving the substance of the policy, and consequently is equally relieved of any duty to exhaust his remedies before filing the appropriate legal cause of action.")

> treatment and told me to talk to my RUM about
> approving me to get a bite guard.  The pain hurts so bad I
> feel it in my ear (illegible) whole left part of my jaw
> hurts.  I can't eat most food because I have to chew hard
> which causes sharp pains.  It's a known fact TMJ is very
> painful.  Yet I'm not (illegible) given any treatment
> whatsoever.  To resolve this issue provide treatment
> appropriate for TMJ problems.

(Dkt. 28-5, Grievance Form, Pg ID 122).  Plaintiff does not reference any policy in

his grievance, and the grievance itself does not appear to suggest that a particular

policy is unconstitutional under every set of circumstances.  Instead, plaintiff

appears to suggest that refusing to provide him treatment for his TMJ in the face of

his significant pain does not pass constitutional muster, and as a consequence he is

grieving the action(s) (or inaction) of the dental staff and perhaps his "RUM."

The basis for dental staff refusing him treatment is dental policy 04.06.150;

thus, it may be inferred that plaintiff is grieving the policy *as specifically applied*

to him.  In *Beebe v. Birkett*, 749 F. Supp. 2d 580, 587 (E.D. Mich. 2010) and *Cary*

*v. Robinson*, 2013 WL 4774718, at *6 (W.D. Mich. Sept. 4, 2013), although not

deciding whether a prisoner challenged a policy in general or as-applied to him at

the administrative level, both decisions are instructive in that they address the

question of whether allegations made at the litigation level were as-applied or

facial challenges.  In *Beebe*, the court stated, "In an as-applied challenge, 'the

plaintiff contends that application of the statute in the particular context in which

he has acted, or in which he proposes to act, would be unconstitutional.'"  749 F.

Supp. 2d at 587 (citing *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 194 (6th Cir. 1997)).  In *Cary*, the court stated, "In order to demonstrate that a law or policy is facially invalid, a 'challenger must establish that no set of circumstances exists under which the [policy] would be valid.'"  2013 WL 4774718, at *6 (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)).  Applying these two principles in the context of plaintiff's grievance leads to the conclusion that plaintiff did not bring a general challenge against the policy.  *See also Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) ("In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge 'is not an attempt to invalidate the law in a discrete setting but an effort 'to leave nothing standing[.]'") (citations omitted).  Rather, to the extent that plaintiff challenged the policy, it concerns the application of the subject policy as to him.  Plaintiff's request for treatment in the grievance effectively asks that the policy prohibiting treatment for TMJ be ignored in his case due to his pain.  Further, even though the grievance makes the broad statement, "It's a known fact TMJ is very painful," when read in the context of the other fairly specific details relating to plaintiff's pain, it is clear that the grievance addresses application of the policy to plaintiff's specific circumstance.  For these reasons, the basis stated for plaintiff's Step I rejection seems to have been misplaced.

a. As-Applied Challenge

Having concluded that plaintiff's issue was grievable, the undersigned finds that plaintiff was therefore required to exhaust his administrative remedies through the prison's grievance process. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). The MDOC grievance rules require a prisoner to include the "[d]ates, times, places, and *names* of all those involved in the issue being grieved" in his grievance. MDOC Policy Directive 03.02.130 ¶ R (July 2007) (emphasis added). Plaintiff did not name Washington in his grievance, in violation of the policy. However, failure to name an individual later sued is not necessarily fatal to a prisoner's suit so long as prison officials had fair notice of the claim raised against the defendant such that there is an opportunity to resolve it.

Indeed, while the grievance procedure *may* promote early notice to those who might later be sued, that has not been considered one of the leading purposes of the exhaustion requirement. *Moffat v. MDOC*, 2010 WL 3906115, *7 (E.D. Mich. 2010) (citing *Jones*, 549 U.S. at 219); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2006) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular

official that he may be sued; the grievance is not a summons and complaint that

initiates adversarial litigation").

> But, at the same time, the grievance must provide
> administrators with a fair opportunity under the
> circumstances to address the problem that will later form
> the basis of the suit, and for many types of problems this
> will often require, as a practical matter, that the prisoner's
> grievance identify individuals who are connected with
> the problem.

*Johnson*, 385 F.3d at 522.

Since the Supreme Court decided *Jones v. Bock,* the Sixth Circuit has stated

that courts ought not impose severe technical requirements on prisoners who

comply with the spirit and purpose of the administrative exhaustion rules. "We

have also explained that the purpose of the PLRA's exhaustion requirement 'is to

allow prison officials a fair opportunity to address grievances on the merits, to

correct prison errors that can and should be corrected and to create an

administrative record for those disputes that eventually end up in court.'" *Mattox*

*v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017), quoting *Reed-Bey v. Pramstaller*,

603 F.3d 322, 324 (6th Cir. 2010); s*ee also Hall v. Raja*, 2010 WL 3070145, at *5

(E.D. Mich. Apr. 26, 2010) (holding that prisoner had exhausted his administrative

remedies despite the fact that he did not specifically name the medical staff whose

decisions he grieved).

> A fair indicator that the purpose of the grievance was
> fulfilled is the prison's response to the inmate's

> complaint. If the information in the grievance is too
> vague or imprecise, a response so indicating would tell
> the interested parties that more detail is necessary.
> However, when the prison officials address the merits of
> the prisoner's complaint without mentioning a problem
> identifying the object of the grievance, the administrative
> system has worked, and the prison officials have had the
> "opportunity to correct [their] own mistakes." *Woodford*,
> 548 U.S. at 89 (internal citation and quotation marks
> omitted).

*Harris-Bey v. Alcodray*, 2017 WL 3124328, at *3 (E.D. Mich. July 24, 2017).

That was the case in *Moffat v. MDOC*, 2010 WL 3906115, *7 (E.D. Mich. 2010). In *Moffat* the court found that the leading purposes of the exhaustion requirement were met where prison officials were alerted to the plaintiff's complaints, the MDOC addressed all of plaintiff's allegations on their merits, and the litigation was improved by the preparation of a useful record despite the fact that plaintiff failed to name the defendants in his grievance. *Id Moffat* is consistent with the Sixth Circuit's decision which was issued the month preceding it in *Reed-Bey v. Pramstaller,* 603 F.3d 322 (6th Cir. 2010). There, the Sixth Circuit joined the majority of other circuits that had then ruled on the issue in holding that a prison administration's actions in addressing a grievance on the merits rather than enforcing its own procedural requirements operates as a forfeiture of any later argument that a grievant failed to exhaust. In *Reed-Bey* the plaintiff/grievant had failed to name the individuals involved in his grievance, but prison officials nevertheless addressed the merits of the plaintiff's claims in the

administrative proceedings.  Finding that the prison officials thereby forfeited their failure to exhaust defense, the court declared, "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Id.* at 325.

In the instant action, prison officials did not address plaintiff's claims on the merits.  Rather, they rejected plaintiff's grievance on procedural grounds.  While it is true that the procedural ground on which the officials relied is different than the ground stated herein to support Washington's failure to exhaust defense, it nevertheless remains the case that officials did not address plaintiff's grievance on the merits.  As such, it would seem that no forfeiture has occurred.[6]  This

---

[6] Plaintiff has not cited, and the court is unaware of any authority holding that rejection of a grievance on a procedural ground different from the ground asserted during litigation for failure to exhaust operates as a forfeiture of the defense.  In at least one four-plaintiff unpublished decision in this district also involving dental claims, *Johannes v. Washington*, 2016 WL 1253266 (E.D. Mich., March 31, 2016), the court considered whether Washington's failure to name defense remained viable when the deficiency was not stated as a ground for rejecting the plaintiffs' grievances, and the grievances were addressed on the merits only as to other staff members.  In other words, Washington posited that since there was no merits review concerning her, *Reed-Bey* did not dictate that she forfeited the defense.  The court found that even though the grievances were not addressed on the merits as to Washington, she nevertheless forfeited the naming deficiency as to at least one of the grievances about which a jury reasonably could find that the naming deficiency was apparent.  Central to the court's rationale however, was the fact that prison administrators had substantively evaluated and addressed the grievants' claims administratively, and in that context should have addressed any apparent naming defect.  The court went on to find that for at least one of the grievances, wherein the grievant challenged an MDOC dental policy, omitting Washington's name was an apparent defect that screeners overlooked or forgave. *Id.* at *10.  Therefore, Washington was barred from later challenging exhaustion based on that plaintiff's failure to name her in his grievance.  Because administrators deemed plaintiff to be grieving a non-grievable issue here, no merits review occurred to support grounds to believe that they overlooked or forgave a naming defect.  Therefore, the fact that the prison did not reject the grievance for failure to name Washington does impact that exhaustion argument as to Washington, though the result may be different for "Dental Staff."

conclusion is consistent with the court's rationale as to why a merits-based resolution precludes a claim of exhaustion.  As articulated by the Sixth Circuit, the reason that addressing a grievance on the merits operates as a forfeiture is because in doing so, "the State, as the promulgator of the rules, has had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served."  *Id.*  Thus, the leading purposes of the exhaustion requirement are met – i.e. the officials are alerted to the issue causing dispute and provided an opportunity to resolve it short of litigation.  On the other hand, where a perceived, albeit perhaps mistaken, procedural error prevents administrative review on the merits it cannot be said that officials had the opportunity to resolve the issue.  Consequently, plaintiff's reliance on *Reed-Bey* (Dkt. 32, p. 3) is to no avail here.

Similarly, the leading purposes may be satisfied where the grievant identifies the prison official by title, but not by name.  *See Beedle v. DeMasi*, 2006 WL 2700753, at *3 (E.D. Mich. Sept. 18, 2006) (citing *Skinner v. Unknown Grandson,* 2006 WL 1997392 at *6 (E.D. Mich., July 14, 2006) ("The purpose of the exhaustion requirement is to give notice to prison officials of the inmates' claims so that the complaints can be resolved by prison administrators in the first instance ... Identifying a particular individual accomplishes this purpose, regardless of whether the individual is identified by his name, position, or other information in the grievance"); *Harrington v. Smolinski,* 2006 WL 549383 (W.D. Mich. March

6, 2006) (identification of defendant as "Classification Director" rather than by name sufficient for exhaustion purposes)).  However, plaintiff here did not name Washington generally by position, title or otherwise in his grievance.  Thus, it cannot be said the plaintiff's grievance satisfied the objectives of the PLRA in this way either.

Finally, another way that a failure to name can be excused is if it is obvious from the facts alleged in the grievance that the defendant was involved.  *Calhoun v. Hill,* 2008 WL 4277171, at *3 (E.D. Mich. Sept. 17, 2008); *Binion v. Glover*, 2008 WL 4097407, at *3-4 (E.D. Mich. Aug. 29, 2008).  The undersigned suggests that the grievance did not make obvious any involvement of Washington.  Plaintiff makes plain that the dental staff denied him treatment despite his pain, and that the RUM was not responding to his kites.  His requested resolution was that he be provided treatment appropriate for TMJ problems.  When the screener responded that plaintiff could not grieve policy, plaintiff responded at Step II that he was not grieving the policy generally, but rather as applied to him.  He also complained that dental "is being prevented from providing treatment."  (Dkt. 28-5).  However, he does not allude to who or what is preventing dental from providing treatment. Viewing the facts in the light most favorable to plaintiff, it may be inferred that plaintiff's grievance pertains to the dental staff's application of Policy Directive 04.06.150 since their denial of treatment stems from that policy.  Yet, even a

generous reading of plaintiff's grievance does not allow for the further inference that the director's actions were at issue.  Indeed, Washington's affidavit makes clear that she plays no role in individual inmates' dental care.  Thus, plaintiff has not exhausted his as-applied claim as it relates to Washington.

### b.  Facial Challenge

The above conclusion does not end the matter as to Washington, however. As noted earlier, plaintiff was not required to utilize the grievance process for a facial challenge to the policy.  A fair reading of plaintiff's complaint in this matter leads the undersigned to the conclusion that plaintiff also seeks to challenge Policy Directive 04.06.150 on its face.[7]  Plaintiff specifically alleges that the contradictory language in the policy causes cruel and unusual punishment.  (Dkt. 1, p. 2). Further, in the "Argument" portion of plaintiff's complaint, he states in relation to the subject policy, that rules cannot be "too vague, too Broad (sic) or in violation of law or the constitution."  (Dkt. 1, p. 3).  He contends further that written rules violating any of those standards must be thrown out.  *Id.*  And his prayer for relief is that the court grant a "Preliminary [sic] and Permanent [sic] injunction ordering defendants to cease enforcing this contradictory Policy [sic] and to cease violating

---

[7] As a *pro se* litigant, plaintiff's filings are liberally construed.  *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of *pro se* litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (*pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings).

Plaintiffs [sic] 8th Amendment rights." (*Id.* at 2).  In challenging the policy as internally inconsistent, plaintiff's complaint points to the apparent contradiction between part (K) of policy directive 04.06.150 which provides that dental services will be available to offenders in all correctional facilities for urgent emergency dental services (with "emergency" and "urgent" dental services defined in Parts (A) and (C)); and Part (M) which states that, notwithstanding part (K), the department will not provide dental services for TMJ or TMD.  (*Id.* at 2).  This challenge can more accurately be understood to state that Part (M)(10)'s across-the-board denial of services for TMJ or TMD, irrespective of the level of pain an inmate is experiencing is unconstitutional under every set of circumstances.  There can be no doubt but that, in her official capacity, the Director is responsible for the overall operations of MDOC and intends its staff to follow P.D. its policies including 04.06.150.  (Dkt. 28-13, ¶¶ 3, 7).  Thus, it appears that the operation of this policy falls under Washington's authority in her official capacity.  And, since this facial challenge did not require exhaustion, Washington remains a properly-named defendant for this claim and summary judgment is not appropriate.

        2.    Personal Involvement

Washington has argued as an additional ground for summary judgment that plaintiff has failed to establish her personal involvement in the conduct at issue in this suit.  In view of the court's conclusion that plaintiff has failed to exhaust his

as-applied claim against Washington, the undersigned declines to address the substance of defendant's argument, as the argument was advanced only as to plaintiff's as-applied challenge.  Furthermore, the Sixth Circuit has found it to be error for the court to grant a motion challenging the sufficiency of the plaintiff's evidence before the plaintiff has had an opportunity to conduct discovery to support his position.  *See Binion v. Glover*, 2008 WL 4097407 (E.D. Mich. Aug. 29, 2008) (J. Lawson) (citing *Myers v. Potter,* 422 F.3d 347, 358 (6th Cir. 2005)). Thus, deciding the issue would be premature at this juncture.

For the foregoing reasons the undersigned recommends that defendant Washington's motion for summary judgment (Dkt. 28) be **GRANTED IN PART** and **DENIED IN PART**.  "Dental Staff" is/are the only remaining defendant(s). The undersigned will separately issue an Order directing plaintiff to provide the name(s) and address(es) of dental staff so that they may be served with the summons and complaint.

### C.  Motions for Injunctive Relief

Plaintiff has filed two motions for temporary restraining order and preliminary injunction.  (Dkts. 3, 23).  The motion at docket no. 3 asks that the defendants be ordered to stop using the unconstitutional policy and provide treatment to plaintiff.  The motion at docket no. 23 asks that the Court order the

defendants to provide pain medication and a soft mechanical diet for his TMJ.

These motions are premature in light of the record that has been developed to date.

In determining whether injunctive relief is proper, the court considers four factors:

(1) whether plaintiff has a strong likelihood of success on the merits; (2) whether

plaintiff has shown irreparable injury; (3) whether issuance of the injunction would

cause substantial harm to others; and (4) whether the public interest would be

served by issuance of the injunction. *See Tumblebus Inc. v. Cranmer*, 399 F.3d

754, 760 (6th Cir. 2005). The Court applies the same standard to a motion for

temporary restraining order as to a motion for preliminary injunction. *W.*

*Michigan Family Homes LLC v. United States Dep't of Agric.*, 2013 WL

12109437, at *1 (W.D. Mich. Nov. 26, 2013). Although no single factor is

controlling, the likelihood of success on the merits is often the predominant

consideration. *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th

Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits

is usually fatal."). Plaintiff bears the burden of demonstrating entitlement to an

injunction, and the burden is a heavy one because injunctive relief is "an

extraordinary remedy which should be granted only if the movant carries his or her

burden of proving that the circumstances clearly demand it." *Overstreet v.*

*Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Indeed,

the "proof required for the plaintiff to obtain a preliminary injunction is much more

stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *see also McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) ("The proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction is an extraordinary remedy."). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n,* 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Michigan Bell Telephone Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001)). A plaintiff must always, however, show irreparable harm before a preliminary injunction may issue. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982).

Plaintiff's filing is insufficient to show that he is likely to succeed on the merits regarding the claims that remain. Plaintiff has not had the opportunity to conduct any discovery on these issues to date, and by his own admission, only learned all of the actors in relation to the formation and application of the subject policies through the instant briefing. Without having developed any factual evidence beyond what appears in his complaint in this matter, it cannot be said that he has set forth adequate proof that he is likely to prevail on the merits of his claim. Several defendants ("Dental Staff") remain unnamed, and plaintiff's as

applied claim against Washington was unexhausted.  Therefore, in the view of the undersigned he has already failed to prevail as to the one claim that the record was sufficiently developed to determine.

Plaintiff has also not demonstrated that irreparable harm will occur if he does not receive the relief he seeks.  Plaintiff indicates that he continues to suffer pain and his condition "may" worsen if he does not receive injunctive relief.  He also contends that the grinding down of his teeth cannot be undone.  Further, it changes his bite pattern which has caused other complications.  Plaintiff has not substantiated these claims with any evidence, such as medical records or opinions, showing that the harm he details is, in fact occurring or that it is irreparable.  On the other hand, defendant has come forward with evidence showing that since the time plaintiff  filed the instant complaint plaintiff has indicated to the JCF health care unit that though he was losing weight, he "eat[s] almost everything in the chow hall."  (Dkt. 35-2, Pg ID 234).  Further, the "Abnormal Involuntary Movement Scale" analysis that was conducted on October 4, 2017 showed no involuntary movement of his jaw.  (*Id. at* Pg ID 236).  And in January of 2018 plaintiff listed items that he was able to eat and those he had problems eating due to his physical response to certain foods.  (*Id.* at Pg ID 240).  Notably, he did not indicate that there were foods he could not eat in relation to any jaw pain. And,

after the TMJ onset, he also reported "good sleep." (*Id*. at Pg ID 242). Thus, factor two weighs against injunctive relief.

The third factor, the balance of hardships is unclear at this point. Though plaintiff contends that a bite guard, surgery, pain medication, a mechanical diet would provide him with appreciable relief (Dkt. 23, p.2), the DAB's own research indicated that a bite guard might cause more harm than good, and surgery will undoubtedly result in a larger expense. Still, providing the other two means of relief seems like a fairly negligible burden for defendants. Finally, the last factor, whether issuing an injunction serves a public policy function is indiscernible without further development of the record. If plaintiff's claims of pain and irreparable harm were substantiated, then surely it would serve an important public policy interest to refrain from subjecting prisoners to extreme and unnecessary physical pain. It is both in the prisoner's best interest in being pain-free and the prison's penal interest in maintaining an orderly and humane environment to avoid such hardship. Yet, absent evidence of that hardship, the prison's interest in administering its policies and maintaining its facilities consistent with its authority to do the same, without interference from the courts is at least as important. On balance, plaintiff's inability to proffer sufficient evidence to support either of the first two factors combined with, at best, ambiguity as to the latter two dooms his

claim for injunctive relief at this point.  Therefore, the undersigned recommends that his motions for injunctive relief be **DENIED**.

Lastly, plaintiff filed a motion for summary judgment which, upon reading the motion, appears to be targeted at the Dental Staff and relating to his as-applied claim.  However, plaintiff names Washington in his request for relief.  (Dkt. 41). To the extent that plaintiff brought this motion against Washington and the other named defendants, the undersigned recommends that it be **DENIED AS MOOT** in light of the above recommendations.  To the extent that plaintiff brought this motion against "Dental Staff," the undersigned recommends that it be **DENIED WITHOUT PREJUDICE**, as this/these individual(s) have not yet been properly named.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant Washington's motion for summary judgment (Dkt. 28) be **GRANTED IN PART**, **DENIED IN PART**, that plaintiff's motions for injunctive relief (Dkts. 3, 23) be **DENIED**, and that plaintiff's motion for summary judgment (Dkt. 41) be **DENIED AS MOOT** to the extent brought against the named defendants regarding his as-applied challenge, and **DENIED WITHOUT PREJUDICE** to the extent brought against "Dental Staff."

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 31, 2018                          s/Stephanie Dawkins Davis
                                              Stephanie Dawkins Davis
                                              United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 31, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel and/or parties of record and I have mailed by United States Postal Service to the following non-ECF participant: Bryan Cary #269436, Gus Harrison Correctional Facility, 2727 E. Beecher Street, Adrian, MI 49221.

                                              s/Tammy Hallwood
                                              Case Manager
                                              (810) 341-7887
                                              tammy_hallwood@mied.uscourts.gov